601 A.2d 1348

**COMMUNITY COLLEGE OF ALLEGHENY COUNTY, Audrey Bruno and Bernice Casella, Appellants,**

**v.**

**Gladys A. SEIBERT, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Oct. 10, 1991.

Decided Jan. 8, 1992.

Petition for Allowance of Appeal Granted June 9, 1992.

David M. Neuhart, for appellants.

William L. Garvin, for appellee.

Before CRAIG, President Judge, DOYLE, J. (P.), and SILVESTRI, Senior Judge.

CRAIG, President Judge.

The question certified in this interlocutory appeal is whether a community college in Pennsylvania is a "local agency" entitled to governmental immunity under 42 Pa. C.S. §§ 8541–8542.[1]

---

1. The memorandum opinion of the trial court, dated June 25, 1991, stated the question certified as "whether or not *sovereign immunity* applies to Community College of Allegheny County and, through it, to

Gladys A. Seibert was admitted to McKeesport Hospital (hospital) on February 16, 1988 with a diagnosis of possible pneumonia. After a fall on February 24, 1988, Seibert's physician ordered that she be confined to bed and fitted with a "posi vest."[2]

The hospital provides clinical training to student nurses attending the Community College of Allegheny County (CCAC) through a contractual arrangement. Bernice Casella was a student nurse assigned to the hospital, and Audrey Bruno was a supervising faculty member. Seibert alleges that on or about February 27, 1988, contrary to physician's orders, Casella released Seibert from the posi vest and left her unattended in a bathroom, where she again fell, sustaining numerous injuries.

Seibert brought a negligence action in the Court of Common Pleas of Allegheny County (trial court) naming CCAC, Casella and Bruno as defendants. CCAC answered, denying the allegations of negligence, and raised the defense of governmental immunity as new matter. CCAC also moved for summary judgment based on governmental immunity.

In an order dated March 1, 1991, the trial court denied the motion for summary judgment, relying upon *Northampton County College v. Dow Chemical*, 389 Pa.Superior Ct. 11, 566 A.2d 591 (1989), *aff'd*, 528 Pa. 502, 598 A.2d 1288 (1991), for the conclusion that CCAC is neither a Commonwealth party nor a local agency.

### 1. Jurisdiction

■ Seibert first contends that, because the trial court found that CCAC is not a local agency, jurisdiction of this appeal properly belongs in Superior Court, to which she requests the case be transferred. Under Chapter 7 of the Judicial Code (Code), 42 Pa.C.S. § 762(a)(7), this court has

co-defendants Audrey Bruno and Bernice Casella." (Emphasis added.) However, the record makes clear that the affirmative defense raised as new matter by the community college was governmental and not sovereign immunity.

**2.** This term is not defined in the complaint, nor can we find a definition in the medical literature. From the context, however, it appears to be a restraining device of some sort.

jurisdiction over appeals from the courts of common pleas involving "immunity waiver matters," which are defined as matters "conducted pursuant to Subchapter C of Chapter 85." [3]

Superior Court, noting that a 1982 amendment broadened the scope of this court's jurisdiction in immunity matters, has stated that "under the present language all that is necessary is that a local agency be sued in tort which then invokes the Commonwealth Court's appellate jurisdiction...." *Brady Contracting Co. v. West Manchester Township*, 338 Pa.Superior Ct. 144, 147–48, n. 1, 487 A.2d 894, 896, n. 1 (1985). Superior Court also concluded that:

> The obvious legislative intent in granting such exclusive appellate jurisdiction to the Commonwealth Court is to ensure a uniform interpretation and application of the provisions of [governmental immunity]. This jurisdiction also extends to all parties and appears in a case as long as at least one party is a local agency and the case is governed at least in part by [governmental immunity].

*Id.*, 388 Pa.Superior Ct. at 148, 487 A.2d at 897.

In the present case, the trial court held that CCAC was *not* a local agency; therefore, there is arguably no local agency before this court. To transfer this case to Superior Court, however, would result in the anomalous situation in which orders of a trial court finding a party to be a local agency would be appealed to this court, while orders finding a party not to be a local agency would be appealed to Superior Court, although both involved the same issue. Such a state of affairs would not ensure uniform interpretation and application of the governmental immunity provisions, but rather would result in two possibly divergent lines of cases, with the question of appellate jurisdiction being determined simply by which party prevailed below.

We therefore conclude that where a party's status as a local agency is the question in an interlocutory appeal, such an appeal is a matter "conducted pursuant to Subchapter C

3. Subchapter C of Chapter 85 of the Code, 42 Pa.C.S. §§ 8541–8564.

of Chapter 85," and jurisdiction properly lies in this court pursuant to 42 Pa.C.S. § 762(a)(7).

## 2. Governmental Immunity

 *Northampton County,* on which both Seibert and the trial court relied, involved the question of whether a community college, as plaintiff in an action for breach of contract and breach of express and implied warranties against a contractor, could invoke the doctrine of *nullum tempus* to negate a statute of limitations defense. Because only the sovereign may assert the defense of *nullum tempus,*[4] Superior Court concluded that an analogy with cases addressing sovereign immunity would be appropriate. *Id.* 389 Pa.Superior Ct. at 20, 566 A.2d at 595.

Superior Court began by noting that sovereign immunity is available only to "Commonwealth parties," which are defined in the Code as "Commonwealth agencies." *Id.* 389 Pa.Superior Ct. at 22, 566 A.2d at 596. Relying on the plain meaning of the definitions, Superior Court stated that:

> [A] Commonwealth agency is 'any executive or independent agency.' An executive agency is '[t]he Governor and the departments, boards, commissions, authorities and other officers and agencies of the Commonwealth government.' An independent agency is defined as 'boards, commissions, authorities and other agencies and officers of the Commonwealth government which are not subject to the policy supervision and control of the Governor ...'.

*Id.* (citations omitted).

Superior Court then held that community colleges were not "Commonwealth parties" for the purpose of sovereign immunity and, therefore, were not entitled to the defense of *nullum tempus. Id.* We accept this analysis and agree that community colleges are not "Commonwealth parties" for the purpose of sovereign immunity.

---

**4.** *Nullum tempus occurit regi,* or "time does not run against the sovereign," is a common law doctrine which makes statutes of limitations inapplicable to the sovereign as a plaintiff.

■ *Northampton County*, however, did not address the status of a community college as a local agency for the purpose of governmental immunity. Instead, in dicta, Superior Court noted that the privilege of *nullum tempus* does not, in the absence of express provision, usually extend to municipalities, counties or other political subdivisions, and further noted that the community college did not argue that it was an integral part of any subdivision. *Id.* 389 Pa.Superior Ct. at 24, 566 A.2d at 597.

Nevertheless, Superior Court went on to state that the community college was "as independent of municipalities and political subdivisions as it is independent of the Commonwealth." *Id.* Because governmental immunity was not an issue in *Northampton County*, this statement is not persuasive in the present case.

CCAC cites two cases which have found that governmental immunity applies to a community college. *See D.P. Enterprises v. Bucks County Community College*, 725 F.2d 943 (3rd Cir.1984); *Szmodis v. Northampton County Area Community College*, 49 Pa.D. & C.3d 286 (C.P. Northampton 1988). Neither of these opinions presents a detailed analysis.

CCAC also presents a somewhat convoluted but ultimately compelling argument, with which we agree. Section 8541 of the Code, 42 Pa.C.S. § 8541, provides that governmental immunity applies to "local agencies." A "local agency" is defined as "[a] government unit other than the Commonwealth government." 42 Pa.C.S. § 8501. "Government unit" is defined in section 102 of the Code, 42 Pa.C.S. § 102, which provides the following definitions:

"**Government agency.**" Any Commonwealth agency or any political subdivision or municipal or other local authority, or any officer or agency of any such political subdivision or local authority.

"**Government unit.**" The General Assembly and its officers and agencies, any government agency or any court or other officer or agency of the unified judicial system.

A local agency, therefore, includes a government unit other than the Commonwealth government. A government unit includes any government agency, which in turn is defined as any political subdivision or municipal or other local authority.

This court employed the same analysis in *Rhoads v. Lancaster Parking Authority,* 103 Pa.Commonwealth Ct. 303, 520 A.2d 122, *petition for allowance of appeal denied,* 515 Pa. 611, 529 A.2d 1084 (1987). In *Rhoads,* however, the agency in question was a municipal authority; hence, the definition of "government agency" proved dispositive.

In the present case, CCAC is not a municipal or other local authority. Therefore, we must still determine whether a community college is a "political subdivision."

Section 1991 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1991, defines "political subdivision" as: "Any county, city, borough, incorporated town, township, school district, vocational school district and county institution district."

Community colleges are created and governed pursuant to the Community College Act of 1963 (CC Act).[5] Section 1901–A of the CC Act defines a community college as: "[A] public college or technical institute which is established and operated in accordance with the provisions of this act by a local sponsor...." 24 P.S. § 19–1901–A(4).

A local sponsor is defined as:

[A] school district or municipality or a county board of school directors or any combination of school districts, municipalities or county boards of school directors which participate or propose to participate in the establishment and operation of a community college.

24 P.S. § 19–1901–A(2).

In 1971, former Attorney General J. Shane Creamer issued an official opinion that community colleges are politi-

---

5. Act of August 24, 1963, P.L. 1132, *formerly,* 24 P.S. §§ 5201–5214, repealed and re-enacted by the Act of July 1, 1985, P.L. 103, currently found at 24 P.S. §§ 19–1901–A–19–1913–A.

cal subdivisions for the purpose of the Act of July 9, 1971, P.L. 201 (Act 31), which permits political subdivisions and authorities to purchase materials, supplies and equipment off contracts of the Department of Property and Supplies (now the Department of General Services).[6]

The Attorney General reasoned that:

Since a community college is, by definition, established and operated by a *local sponsor* which must consist of a school district, municipality (i.e. city, borough, town, township or county) or county board of school directors or any combination thereof, each of which is included within the definition of a political subdivision, under the Statutory Construction Act, supra, it follows that ... community colleges are political subdivisions within the meaning of Act No. 31.

1971 Op. Att'y Gen. No. 70.

In addition to being sponsored solely by political subdivisions, community colleges under the CC Act are expressly granted the right to participate in various other statutory schemes which are normally reserved for political subdivisions. For example, Section 1913–A(g) of the CC Act, 24 P.S. § 19–1913–A(g), provides that the community colleges shall be eligible for participation in the State Public School Building Authority Act[7] and the Municipal Authorities Act of 1945.[8] Furthermore, all administrative personnel, faculty and other employes of the community colleges are eligible for inclusion in the Public School Employees' Retirement System of Pennsylvania and the Pennsylvania State Employees' Retirement System. 24 P.S. § 19–1913–A(f).

In *Szmodis*, 49 Pa.D. & C.3d at 290, Judge Moran wrote that "[s]imple logic would appear to require a finding that a community college, as a tax supported institution created by local government units under a grant of authority by the

6. Act 31 amended Section 2403 of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, 71 P.S. § 633.

7. Act of July 5, 1947, P.L. 1217, 24 P.S. §§ 791.1 to 791.17.

8. Act of May 2, 1945, P.L. 382, 53 P.S. §§ 301 to 322.

state legislature, is a local governmental agency." We agree.

Accordingly, we conclude that a community college is a local agency for the purpose of governmental immunity.

## ORDER

NOW, January 8, 1992, the order of the Court of Common Pleas of Allegheny County, dated March 1, 1991, denying appellants' motion for summary judgment is reversed, and this case is remanded for further proceedings consistent with this opinion.

Jurisdiction relinquished.